# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

SHUNDRA HATCH, ET AL.                    CIVIL ACTION

VERSUS                                   NUMBER 10-548-BAJ-MJU

STATE OF LOUISIANA THROUGH THE
DEPARTMENT OF EDUCATION AND
THE BOARD OF ELEMENTARY AND
SECONDARY EDUCATION AND
P E L I C A N   E D U C A T I O N A L
FOUNDATION, INC.

### ORDER

This wrongful termination matter is before the Court on plaintiff's motion for partial summary judgment (rec. doc. 19), defendant State of Louisiana's cross motion for summary judgment (rec. doc. 22), and defendant Pelican Educational Foundation, Inc.'s motion for summary judgment (rec. doc. 25), all of which are opposed (rec. docs. 23, 24, 26, and 29). This Court has subject matter jurisdiction over this matter based on federal question jurisdiction, 28 U.S.C. §1331.

### Background

The plaintiff in this matter, Kesha Burton (Burton), alleges that she was wrongfully discharged from employment with Kenilworth Science & Technology Charter School (Kenilworth) in violation of both state and federal laws. Kenilworth is a public school that was deemed a "Type 5 Charter School"[1] for the 2009-2010 academic year and was

---

[1] Pursuant to La. R.S. 17:3973 (2)(b)(v)(aa), a Type 5 charter school is defined as a "preexisting public school transferred to the Recovery School District pursuant to R.S. 17:10.5 or 10.7 and operated as the result of and pursuant to a charter between a nonprofit corporation and the State Board of Elementary and Secondary Education, or between a nonprofit corporation and a city, parish, or other local school board or other public entity in the case of the renewal of a Type 5 charter of a school that has been transferred back to the jurisdiction of the local school board or other public entity pursuant to R.S. 17:10.5(c)."

transferred by the Board of Elementary and Secondary Education (BESE) from the jurisdiction of the East Baton Rouge Parish School System to the jurisdiction of the Recovery School District (RSD).  On July 1, 2009, BESE entered into a Charter School Contract with Pelican Educational Foundation, Inc., and its Board of Directors ("the Charter Operator") for the operation of Kenilworth for an initial term of three years (rec. doc. 25-3, Exhibit 1 - Charter Contract for Kenilworth Science and Technology Charter School).  The Charter School Contract provides as follows with respect to "Employment Matters:"

> The Charter Operator shall employ and contract with necessary personnel. It shall implement a personnel policy that addresses such issues as hiring of personnel, terms of employment, and compensation consistent with that contained in the Charter Application. The parties agree that teachers and other staff employed by the Charter Operater are not employees of BESE.

> (rec. doc. 25-3, Exhibit 1).

On May 11, 2009, plaintiff Burton executed a "Teacher Agreement" with Kenilworth to work as a teacher at  Kenilworth during the 2009-2010 academic year (rec. doc. 25-4, Exhibit 2 - Teacher Agreement).   The Teacher Agreement was executed by Cunyet Dokeman as Principal of Kenilworth and provides that "[b]oth KENILWORTH and the Teacher agree that this agreement may be terminated (with a two week notice) by either party at any time without penalty." Id, ¶16.  Plaintiff Burton was aware when she was hired by Kenilworth that it was a charter school, that it was not operated under the East Baton Rouge Parish School System, and that it was responsible for its own decisions regarding hiring, disciplining, and firing employees (rec. doc. 25-5, Exhibit 3 - Deposition of Burton).

On October 23, 2009, plaintiff Burton was terminated by Dokeman, Principal of Kenilworth, and provided with 2 weeks of compensation at that time (rec. doc. 19-1, Exhibit 3).  The reason for plaintiff's termination is disputed - plaintiff contends that she was fired

because she informed Dokeman that she needed to invoke her rights under the Family Medical Leave Act (FMLA) in order to care for her son who was ill, and defendant Pelican contends that plaintiff was fired because she was late for work, left children unsupervised, allowed children to sleep during class, failed to cooperate with other teachers, failed to follow lunch procedures, used the school copier for personal use, and failed to attend meetings on time.

As a result of her termination, on February 13, 2010, plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that she was wrongfully terminated for exercising her rights under the FMLA and "in violation of the Americans with Disabilities Act of 1990 due to a disability"[2] (rec. doc. 25-9, Exhibit 7).  On May 25, 2010, plaintiff Burton filed suit in state court on May 25, 2010, against the State of Louisiana, through the Department of Education (DOE) and the Board of Elementary and Secondary Education (BESE), and Pelican Educational Foundation, Inc. (Pelican), alleging that she was wrongfully terminated in violation of Louisiana law and her employment contract, specifically La. R.S. 17:416.18, La. R.S. 17:3881, et seq., La. R.S. 17:1990, La. R.S. 17:443, et seq., La. R.S. 23:332, and in violation of her rights under the Civil Rights Act of 1964 and the Family Medical Leave Act (FMLA). (rec. docs. 1-1 and 13).[3]

Thereafter, plaintiff filed a motion for partial summary judgment seeking a finding that she was wrongfully terminated in violation of Louisiana law because she was a

---

[2] Plaintiff never formally asserts a claim under the Americans with Disabilities Act (ADA) in her original petition or in her amended complaint. See rec. docs. 1-1 and 13.

[3] Shundra Hatch and Carla Wells also asserted claims against defendants in the original petition, but were later dismissed on August 30, 2011, leaving only Burton as a plaintiff in this matter.

certified teacher who taught at Kenilworth, which is a "special school" under La.R.S. 17:45[4]; therefore, she argues that she could only be terminated by BESE "upon the written recommendation of the superintendent or other head or director of the special school accompanied by valid reasons therefor." See La. R.S. 17:45. Additionally, plaintiff argues that if she is found to be an at-will employee, the method of termination was not in compliance with the Kenilworth Staff Handbook.   The State Defendants and Pelican oppose the motion for partial summary judgment and seek summary judgment on plaintiff's state and federal claims by arguing that Louisiana statutes relied on by plaintiff do not apply to charter schools like Kenilworth, that BESE is immune from civil liability based on La. R.S. 17:3993, and that plaintiff's Title VII, FMLA, and ADA claims should be dismissed as a matter of law.   The motions for summary judgment are now before the Court for consideration.

**Summary Judgment Standard**

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56.   The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

---

[4] La. R.S. 17:45 *Probation and tenure of teachers in special schools*
A.  As used in this Subpart, the word "teacher" means any certified employee in a special school who holds a teacher's certificate and whose legal employment requires certification under the regulations of the board or of any certification authority established by law. A teacher shall be entitled to tenure benefits as follows:

(1)(a) Each teacher shall serve a probationary term of three contract years to be computed from the date of his first appointment in the special school in which the teacher is serving his probation. During the probationary term, the board may dismiss or discharge any probationary teacher upon the written recommendation of the superintendent or other head or director of the special school accompanied by valid reasons therefor.

record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912–13 (5th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed .2d 538 (1986); *see also, Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995). An issue as to a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, at 255.

Further, Fed. R. Civ. P. 56(e)(3) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."

## **Discussion**

This wrongful termination matter involves substantial state law and federal law claims. The Court will address each of plaintiff's claims individually beginning with her claims under federal law.

Title VII Claims

Plaintiff alleges in her petition that she was subjected to a hostile work environment and terminated because of her "race, gender, national origin, and religion" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* (rec. doc. 1-1, ¶¶9-12). Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ..." 42 U.S.C. § 2000e–2(a). A claim for unlawful discrimination under Title VII may be brought by an employee against her "employer" as defined by 42 U.S.C. §2000e. The parties dispute which entity - Pelican/Kenilworth, BESE, RSD, or the State - was plaintiff's "employer" for purposes of plaintiff's Title VII claim. The Court need not resolve this issue because plaintiff's Title VII claims fail on other grounds.

Before pursuing a Title VII claim in federal court, a plaintiff must first exhaust her administrative remedies. In a "deferral" state like Louisiana, an aggrieved person must exhaust her remedies by first filing with a "State or local agency with authority to grant or seek relief." See 42 U.S.C.§ 2000e-5(e)(1). If a complaint is filed with a State or local agency, as was done in this case, a charge of discrimination must be filed with the EEOC within 30 days after receiving notice that the State or local agency has terminated proceedings or within 300 days after the alleged unlawful employment practice occurred, whichever is earlier. See 42 U.S.C.§ 2000e-5(e)(1); *Celestine v. Petroleos deVenezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001). The limitations period to file a claim for discrimination with the EEOC "begins to run from the time the complainant knows or

reasonably should have known that the challenged act has occurred." *Mayes v. Office Depot, inc.* 292 F. Supp.2d 878, 888 (W.D. La. 2003).  Title VII further provides that a plaintiff has 90 days to file a civil action after receipt of a notice of right to sue from the EEOC.  <u>See</u> 42 U.S.C. §2000e-5(f)(1).  Although the filing of an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court" *Dao v. Auchan Hypermarket,* 96 F.3d 787 (5th Cir.  1996). Summary judgment is appropriate on Title VII claims when the record does not contain evidence of a right to sue letter for those specific claims.  <u>See</u> *Fields v. Phillips School of Business*, 59 F.3d 1242 (5th Cir. 1995), citing *Reeves v. MCI Telecommunications Corp.*, 909 F.2d 144, 145 (5th Cir. 1990).

Further, the scope of the judicial complaint is limited to the scope of the EEOC investigation. "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges." *Clayton v. Rumsefeld*, 106 F. App'x 268, 271 (5th Cir. 2004).

All of plaintiff's claims of discrimination arise from her discharge from employment. It is undisputed that plaintiff was discharged by Mr. Dokmen as Principal of Kenilworth on October 23, 2009.  Plaintiff filed a charge of discrimination with the EEOC of the Louisiana Commission on Human Rights on February 13, 2010 (rec. doc. 25-9, Exhibit 7).  Plaintiff had the option to select discrimination based on Race, Color, Sex, Religion, National Origin, Retaliation, Age, Disability, Genetic Information, and Other; however, only the box next to "Disability" was marked (rec. doc. 25-9, Exhibit 7).  Additionally, plaintiff states in the narrative section of the EEOC form that, "I was discharged when I asserted my rights under FMLA" and in " ... violation of the Americans with Disabilities Act of 1990 (ADA) due

to disability." Id.   Plaintiff also drafted a letter to the EEOC explaining the basis of her claims for wrongful termination from Kenilworth (rec. doc. 26-3, Exhibit 2).   Plaintiff's letter states as follows: "I was discriminated against because I told Mr. Dokeman that I would have to assert my rights under FMLA and he terminated me for asserting those rights." Id.

Based on the evidence submitted by the defendant Pelican, it is clear that plaintiff failed to exhaust her claim for discrimination and hostile work environment based on "race, gender, national origin, and religion" by filing a claim for discrimination based on those grounds with the EEOC prior to filing suit.   In light of the narrative portion of the EEOC filing and the letter submitted by plaintiff, both of which focus on FMLA discrimination, there is no reason to believe that the investigation by the EEOC would have extended into issues regarding plaintiff's race, sex, national origin, or religion.  Additionally, more than 300 days have elapsed since the alleged unlawful employment practice occurred, that is, the date plaintiff was discharged on October 23, 2009; therefore, plaintiff's claims for hostile work environment and discrimination based on race, sex, national origin, and religion are time-barred.  See Gomez v. Orleans Parish School Board, 2005 WL 2050285 (E.D. La. 2005). Plaintiff's claims under Title VII are dismissed, with prejudice.[5]

Family Medical Leave Act

Plaintiff's amended complaint contains the following allegation regarding the FMLA:

17.

Kesha Burton was also terminated by Cunyet Dokeman because she told him that because of the pending surgery of her son that she was going to

_____

[5]  The Court's finding that plaintiff's claims for hostile work environment and discrimination claims under Title VII are dismissed for failure to exhaust and prescription precludes consideration of whether plaintiff established a prima facie case of hostile work environment or discrimination based on race, gender, national origin, and religion.

-8-

need to take some time off as provided by the Family Medical Leave Act to care for him.  Dokeman did not want her to take this time off and terminated her before her son's scheduled surgery so that she would not be able to exercise her rights under this act.

(rec. doc. 13).[6]

The Family Medical Leave Act, 29 U.S.C. §2601, *et seq.*, permits employees to take reasonable leave from their jobs for medical reasons.  The FMLA makes it unlawful for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act.  <u>See</u> 29 U.S.C. §2615(a)(1).  The FMLA also prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual" for exercising FMLA-protected rights.  <u>See</u> 29 U.S.C. §2615(a)(2).

Plaintiff alleges that she was discharged by Dokeman, an employee of Pelican and administrator of Kenilworth,  because she attempted to exercise her rights under the FMLA (rec. doc. 13).[7]  Defendant Pelican moves for summary judgment on plaintiff's FMLA claim arguing that plaintiff was not a "covered employee" under the FMLA; therefore, she is not entitled to the benefits of the FMLA (rec. doc. 25-1).

To survive summary judgment on an FMLA retaliation claim, plaintiff Burton must first establish a *prima facie* case by showing: (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the discharge.  <u>See</u>, e.g., *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir.2005), *citing Hunt v. Rapides Healthcare Sys., LLC*, 277

_____

[6]  Plaintiff also asserted her FMLA claim in her EEOC filing on February 13, 2010 (rec. doc. 25-9).

[7]  Plaintiff's original petition states that "Pelican placed its employee, Cunyet Dokeman ("Dokeman") as top administrator at the school with authority to hire, supervise and recommend termination of employees at the school with supervision by and permission of DOE." (rec. doc. 1-1).

F.3d 757, 768 (5th Cir. 2001).

Defendants argue that plaintiff is unable to establish that she was a protected employee under the FMLA. Under the FMLA, an employee is eligible for leave only if the employee has been employed "for at least 1250 hours of service with such employer during the previous 12-month period." See 29 U.S.C. §2611(2)(A)(i)-(ii).  The only FMLA claim alleged in plaintiff's original petition and amended complaint is against Cunyet Dokeman, presumably as the Principal of Kenilworth and as an employee of Pelican. See rec. docs. 1-1 and 13.  A liberal construction of plaintiff's allegations supports a finding that plaintiff has asserted a FMLA claim against Pelican in this matter.  There are no facts in either the original petition or the amended complaint, however, to support a finding that plaintiff has alleged a FMLA claim against the State Defendants.

It is undisputed that plaintiff was hired to work at Kenilworth on May 11, 2009, and was scheduled to begin work during the 2009-2010 academic year (rec. doc. 19-1, Exhibit 2 - Teacher Agreement).  It is further undisputed that plaintiff was discharged on October 23, 2009, a few months after the academic year commenced.  Plaintiff does not dispute that she did not work 1250 hours in the preceding 12 months for Kenilworth/Pelican in order to entitle her to FMLA leave from Kenilworth/Pelican.  Rather, plaintiff contends that she is an employee entitled to FMLA benefits because she "has been an accredited school teacher in the public school system funded and regulated by the State of Louisiana since 1998 and that she worked over 1250 hours in the year prior to her termination at Kenilworth school" (rec. doc. 26-2, Exhibit 1- Burton affidavit).  Plaintiff's affidavit, however, does not indicate the employer for whom she worked 1250 hours "in the year prior to her termination" in order to carry her burden of proving that she is entitled to FMLA benefits

from Pelican/Kenilworth.  Accordingly, plaintiff is unable to prove that she was protected by the FMLA and her claims under the FMLA are dismissed.

### Americans with Disabilities Act

Defendant Pelican moves for summary judgment on plaintiff's claim under the Americans with Disabilities Act (ADA) arguing that plaintiff is not disabled and, therefore not entitled to relief.  Although plaintiff's EEOC claim contains a reference to an ADA claim, plaintiff clarifies in her memorandum that she did not intend to make a claim for disability discrimination.[8]   Plaintiff also specifically states in her affidavit attached to her memorandum that, "[a]ffiant did not file a charge of discrimination with the Louisiana Commission of Human Rights alleging disability discrimination."  More importantly, the Court notes that neither the original petition nor the amended complaint contain a claim under the ADA.

### State Law Claims

Plaintiff has also alleged wrongful discharge based on various Louisiana statutes, including La. R.S. 17:416.18, La. R.S. 17:3881, et seq., La. R.S. 17:1990, La. R.S. 17:443, et seq., La. R.S. 23:332 (rec. doc. 1-1).  This matter was removed to this Court based on federal question jurisdiction, and the Court has dismissed all of the federal claims before it.  Thus, the Court must consider whether it should continue to exercise supplemental jurisdiction over plaintiff's state law claims by considering the statutory factors set forth in

---

[8] It is undisputed that plaintiff is not disabled (rec. doc. 25-5, Exhibit 3 - Burton deposition, p. 127). Plaintiff clarifies through her briefing that the "disability" reference in the EEOC form does not apply to her, but to her son's disability (rec. doc. 26).  Plaintiff explains that she did not select the "Disability" box on the EEOC form, but that the "X" next to the "Disability" box was "preprinted by the Louisiana office and sent to her to sign the form after she had already sent a letter detailing the violation by the state as a violation of the FMLA right to take six weeks of unpaid leave to care for her son who was disabled from a heart difficulty" (rec. doc. 26).

28 U.S.C. §1367, including (1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction. *Enochs v. Lampasas County*, 641 F.3d 155 (5th Cir. 2011), citing 28 U.S.C. § 1367(c).

In this case, the statutory factors favor remand of plaintiff's state law claims. Plaintiff's state law wrongful termination claim involves a challenge to the proper termination method for charter school teachers under the Charter School Demonstration Programs Law and a constitutional challenge to La. R.S. 17:3993, which provides the BESE with immunity from civil liability for damages associated with the operation of a charter school. These are novel issues of state law, with no Louisiana Supreme Court guidance. Plaintiff's state law claims predominate over plaintiff's federal law claims, as all federal law claims have been dismissed from this matter in connection with the motions for summary judgment. Thus, the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this matter. This matter is remanded back to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, for further proceedings. Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by Pelican Educational Foundation, Inc. (rec. doc. 25) is **GRANTED IN PART AND DENIED IN PART** in that plaintiff's claims of discrimination based on race, sex, national origin, and religion under the Civil Rights Act of 1964 and claims under the Family Medical Leave Act are dismissed, with prejudice.

-12-

**IT IS FURTHER ORDERED** that the Court exercises its discretion and declines to exercise supplemental jurisdiction over all of plaintiff's remaining state law claims and that this matter is **REMANDED** to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

**IT IS FURTHER ORDERED** that plaintiff Kesha Burton's motion for partial summary judgment (rec. doc. 19) and defendant State of Louisiana's motion for summary judgment (rec. doc. 22) are **DISMISSED AS MOOT.**

Baton Rouge, Louisiana, January 17, 2013.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**